IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| AMERICAN BOTTOM CONSERVANCY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CIVIL NO. 09-603-GPM |
| ) | |
| UNITED STATES ARMY CORPS OF ) | |
| ENGINEERS, COL. THOMAS E. ) | |
| O'HARA, and WASTE MANAGEMENT ) | |
| OF ILLINOIS, ) | |
| Defendants. ) | |

# MEMORANDUM AND ORDER

**MURPHY, District Judge:**

This case returned to the Court on mandate of the Seventh Circuit Court of Appeals, which found Plaintiff does have standing (Doc. 72). The issue of subject matter jurisdiction now settled, the parties' cross-motions for summary judgment are again pending before the Court (Docs. 30, 35, 38). For the reasons that follow, the motions of the United States Army Corps of Engineers ("the Corps") and Col. Thomas E. O'Hara and of Waste Management of Illinois ("Waste Management") are **GRANTED**, the motion of Plaintiff American Bottom Conservancy **DENIED**. Judgment shall enter for Defendants.

**Background**

The Court's conception of the basic facts in this case is unchanged from the Order at Doc. 57.[1] Waste Management sought a permit from the Corps for expanded excavation of cover soil

---

[1] The Seventh Circuit's opinion of June 14, 2011 also lays out background facts in great detail. *American Bottom Conservancy v. U.S. Army Corps of Engineers,* 650 F.3d 652, 654-55 (7th Cir. 2011).

for landfill use. The Corps issued the permit, after what Plaintiff claims was an insufficient review. The Corps' permit is a section 404 permit under the Clean Water Act, 33 U.S.C. § 1344. After the case returned from the Seventh Circuit, the Court held a hearing and all parties filed supplemental briefs (Docs. 77, 80, 81, 82). The parties agree there are no outstanding issues of material fact.

Plaintiff alleges five claims for relief.[2] First, Plaintiff claims Waste Management violated section 401 of the Clean Water Act by failing to obtain § 401 certification from the Illinois Environmental Protection Agency ("IEPA") for *construction* of a landfill—the § 401 certification regards only soil cover excavation for Waste Management's preexisting landfill (Doc. 2, p. 11). The Corps abused its discretion when it issued the § 404 permit to Waste Management that allows for landfill construction without considering the lack of IEPA § 401 certification for that purpose. Second, Plaintiff claims the Corps failed to consider flood hazards when it issued the § 404 permit, though Federal Regulations require the Corps to do so. 33 C.F.R. § 320.4(a); Executive Order 11988, 42 Fed.Reg. 26951 (1977). Third, the Corps impermissibly issued only an Environmental Assessment ("EA"), as opposed to the more rigorous Environmental Impact Statement ("EIS"), despite evidence that the area at issue is in a 100-year floodplain. Fourth, though the Corps is required to consider alternatives for all non-water-dependent wetland projects (which this project undoubtedly is), the Corps' alternatives analysis was impermissibly shallow and not in accord with the regulations of the Clean Water Act. Finally, Plaintiff claims that shallow alternatives analysis also violated the National Environmental Policy Act ("NEPA"). Plaintiff claims the Corps acted arbitrarily and capriciously and abused its discretion, so this Court should—pursuant to the Administrative Procedures Act, 5 U.S.C. § 706—find the Corps' permit null and void and enjoin

---

[2] Plaintiff voluntarily dismissed its sixth claim (Doc. 27).

Waste Management from acting on that permit.

**Analysis**

The Court's review of the Corps' permit issuance is narrow. *F.C.C. v. Fox Television Stations, Inc.,* 556 U.S. 502, 513 (2009); *Highway J Citizens Group v. Mineta,* 349 F.3d 938, 952 (7th Cir. 2003) ("our inquiry is searching and careful but the ultimate standard of review is a narrow one.") (internal quotations omitted). "If an agency has considered the proper factors and makes a factual determination regarding the significance of environmental impacts, that determination implicates substantial agency expertise and is entitled to deference." *Environmental Law and Policy Center v. United States Nuclear Regulatory Commission,* 470 F.3d 676, 682 (7th Cir. 2006). The Court does not "approach th[e] dispute as a panel of environmental experts attempting to decide which party is correct. We only review whether the agencies charged with carrying out this project took a 'hard look' at the relevant information and consequences and made an informed judgment." *Mineta,* 349 F.3d at 955.

One of the Court's main foci in granting summary judgment for Defendants is the fact that the Corps simply does not issue landfill development permits—the state does.[3] *See American Bottom Conservancy v. U.S. Army Corps of Engineers,* 650 F. 652, 654 (7th Cir. 2011) ("The Corps of Engineers doesn't authorize landfills."). Plaintiff contends the Corps' permit allowed for construction of a new landfill without proper analysis of the new landfill's effects. And, while it is true the issued permit contemplates new landfill construction, all the Corps authorized was movement of fill materials (Doc. 28-1, p. 16). The request to excavate soil cover, and the Corps' permit for that action, was not a pretext for new landfill construction. Moving new fill material

---

[3] According to the parties at the Court's October 24, 2011 hearing, the State of Illinois has now issued a landfill development permit to Waste Management. This was not the case when Plaintiff filed its complaint or when the parties filed their motions for summary judgment.

was necessary to support Waste Management's existing landfill, regardless of whether the new landfill was approved (by the State) (Doc. 28-2, p. 44-45; Doc. 28-3, p. 48-49; Doc. 28-4, p. 24, 42; Doc. 28-33, p. 40; Doc. 28-35, p. 16). Because the Corps cannot license landfills, the IEPA's Clean Water Act section 401 certification was sufficient. The § 401 certification allowed for soil cover excavation (Doc. 28-33, p. 37-40) and that is what the Corps permitted. Also because the Corps cannot license landfills, there was no causal relationship between the soil cover permit and the new landfill—at least no relationship that mandates more analysis than the Corps conducted. *See Department of Transportation v. Public Citizen,* 541 U.S. 752, 770 (2004) ("We hold that where an agency has no ability to prevent a certain effect due to its limited statutory authority over the relevant actions, the agency cannot be considered a legally relevant 'cause' of the effect."). The Corps was not required to consider the full environmental impact of a future project that it could not itself authorize. *Id.* at 769 ("It would not, therefore, satisfy NEPA's 'rule of reason' to require an agency to prepare a full EIS due to the environmental impact of an action it could not refuse to perform.")

It is true that if an agency "constricts the definition of the project's purpose and thereby excludes what truly are reasonable alternatives," the agency is not fulfilling its requirements. *Simmons v. U.S. Army Corps of Engineers,* 120 F.3d 664, 666 (7th Cir. 1997). However, what we have in this case is really the opposite of such impermissible 'segmenting.' Here, the Corps permitted movement of soil cover and contemplated the future state-permitted activity of a new landfill. The Corps described the project as the "[p]lacement of fill material into waters of the United States in conjunction with the construction of the North Milam Recycling and Disposal Facility (RDF) to be located just north of the existing Milam RDF in wetlands adjacent to Cahokia

Canal." (Doc. 28-1, p. 16). The Corps did, in fact, factor in the potential for new-landfill construction when it conducted its permit analysis (Doc. 28-1, p. 62-63; Doc. 28-2, p. 2-3, 9, 11, 13).

The Corps' project definition is expansive. It is not, then, the case that the Corp constricted the "project" to avoid consideration of project alternatives. The Corps is, of course, required to assess practicable alternatives. 40 C.F.R. 230.10(a). While "[i]t is axiomatic that the Corps need not examine every conceivable alternative", it is also the case that "a federal agency cannot ram through a project before first weighing the pros and cons of the alternatives." *Simmons,* 120 F.3d at 669, 670. Plaintiff complains that the Corps only referenced alternative borrow pit sites, not alternative landfill sites. But, given that the Corps could not itself permit a landfill—nor had Illinois issued a new landfill permit—the alternatives analysis focusing on other borrow pit sites was appropriate.

Plaintiff also argues that the Corps' analysis was deficient because there was not enough emphasis on the project's location in a floodplain. The Corps argues the project is not in a floodplain. While it might seem an outstanding question of material fact, the parties actually agree on the particulars: Corps employees have publically stated that existing levees in the project area no longer provide adequate flood protection; and the Federal Emergency Management Agency ("FEMA") has not identified the project area as a 100-year floodplain (Doc. 31, p. 14; Doc. 41, p. 18-19). In Plaintiff's estimation, just because FEMA fails to include the project area on a floodplain map, the Corps is not discharged from a searching analysis of the effects a 100-year flood would have—particularly given that Corps employees have publically acknowledged the threat of such a flood. The Corps argues that "floodplain" designation rests solely with FEMA,

and as the project area is not in a FEMA-designated floodplain, no additional consideration of flood risks (i.e. an EIS) was required. The Corps has the better of this argument, as practically, it must rely on other agency determinations in its own risk analysis. As the Seventh Circuit recently stated:

> Although the Corp has an independent responsibility to enforce the Clean Water Act and so cannot just rubberstamp another agency's assurances concerning practicability and environmental harm, it isn't required to reinvent the wheel. If another agency has conducted a responsible analysis the Corps can rely on it in making its own decision. After all, it is permitted to rely (though not uncritically) on submissions by private permit applicants and on consultants, and it necessarily relies heavily on them—so why not on federal agencies that have relevant responsibilities and experience?

*Hoosier Environmental Council v. U.S. Army Corp of Engineers,* 722 F.3d 1053, 1061 (7th Cir. 2013). The Corps was entitled to rely on FEMA's determination and thus limit itself to an EA-depth analysis. "[T]he Corps' regulations do not require the Corps to undertake an independent investigation or to gather its own information upon which to base an environmental assessment." *Id., quoting Friends of the Earth v. Hintz,* 800 F.2d 822, 834 (9th Cir. 1986).

### Conclusion

"[I]f a federal agency has heard all the objections to a plan and considered all the sensible options before it, the agency has fulfilled its duty." *Simmons,* 120 F.3d at 666. Here, the Corps fulfilled its duty. The NEPA-required analysis passes muster and neither Defendant acted in violation of the CWA. Defendants are therefore entitled to summary judgment.

**IT IS SO ORDERED.**

**DATED**: September 27, 2013

s/ *G. Patrick Murphy*
G. PATRICK MURPHY
United States District Judge